622 So.2d 963 (1993)
Michael Tyrone CRUMP, Appellant,
v.
STATE of Florida, Appellee.
No. 74230.
Supreme Court of Florida.
June 10, 1993.
Rehearing Denied September 3, 1993.
*966 James Marion Moorman, Public Defender, and A. Anne Owens, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Michael Tyrone Crump appeals his conviction for the first-degree murder of Lavinia Clark and his resulting death sentence. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution. We affirm Crump's conviction for first-degree murder; however, we vacate the death sentence and remand to the trial judge to reweigh the circumstances and resentence Crump.
On December 12, 1985, the police found the nude body of Lavinia Clark, a prostitute, in an open area adjacent to Shady Lawn Cemetery in Tampa. An initial examination of the body showed that Clark had been manually strangled and had ligature marks on her wrists consistent with being bound. After three months, the police discontinued the investigation of Clark's murder because of a lack of evidence.
Ten months later, on October 9, 1986, the police found the nude body of Areba Smith, a prostitute, in an open field adjacent to Centro Asturiano Cemetery in Tampa. Smith had been manually strangled and had ligature marks on her wrists consistent with having been bound. The police made a plaster cast of a set of tire tracks found within nineteen feet of Smith's body. In addition, the police found a witness who had seen Smith enter a truck on the night of her murder. One of the police officers recognized that the witness's description matched Crump's truck. The witness subsequently identified Crump's truck from a police photo-pack. Following the witness's identification, the police seized Crump's truck on a public street without a warrant and subsequently searched it. The police discovered a restraining device, a hair, and Clark's driver's license hidden underneath the truck's carpeting. Following the search, the police compared the tread on Crump's truck with the plaster casts of the tire tracks found near Smith's body and concluded that they were similar.
After the seizure of his truck, Crump went to the police department for an interview at which time the police advised him of his constitutional rights.[1] Detective Parrish of the Tampa Police Department confronted Crump with the evidence gathered from the search and interviews. At this time, Crump confessed to killing Smith. According to Crump, he contracted with Smith for oral sex. However, Crump told the detective that Smith began to argue with him and that she had threatened him with a knife, so he strangled her. Crump was convicted of the first-degree murder of Smith and received a life sentence.
During the initial interview with Crump, the Tampa Police Department contacted the Hillsborough County Sheriff's office about finding Clark's driver's license. Consequently, Detective Onheiser, the lead detective in Clark's murder investigation, questioned Crump about Clark's murder. During the questioning, Crump admitted to giving Clark a ride in his truck and arguing with her; however, he denied killing Clark. Detective Onheiser testified that Crump stated that he had given Clark a ride in his truck, but that he had pushed her out of the truck because of an argument. Further, Crump explained that Clark had left her purse in the truck and that he had *967 thrown it away, but that he had kept her driver's license.
During the trial for Clark's murder, the State introduced evidence of Crump's murder of Smith to establish his identity as Clark's killer. Further, the State introduced evidence from the search of Crump's truck as well as expert testimony showing that Clark had ligature marks on her wrists and that she had been manually strangled, like Smith. The State also presented expert testimony that the hair found in Crump's truck was consistent with hair from Clark's head, and that the hair had been forcibly removed.
The jury found Crump guilty of first-degree murder, and recommended a death sentence by a vote of eight to four. The trial judge found in aggravation that: 1) Crump had previously been convicted of a capital felony or threat of violence to another person, pursuant to section 921.141(5)(b), Florida Statutes (1989); and 2) Crump committed the capital felony in a cold, calculated, and premeditated manner without moral or legal justification, pursuant to section 921.141(5)(i), Florida Statutes (1989). The trial judge found in mitigation that: 1) Crump committed the capital felony while under the influence of extreme mental or emotional disturbance, pursuant to section 921.141(6)(b), Florida Statutes (1989); 2) Crump's ability to appreciate the criminality of his conduct or conform his conduct to the requirements of law was substantially impaired, pursuant to section 921.141(6)(f), Florida Statutes (1989); and 3) "[a]ny other aspect of [Crump's] character or record, and any other circumstance of the offense as evidenced by expert and lay testimony in the case." The trial judge followed the jury recommendation and imposed a death sentence.
Crump raises seven issues on appeal in the guilt phase of the trial: 1) whether the trial court erred by admitting Williams[2] rule evidence; 2) whether the trial court erred by overruling Crump's objections to the testimony of Federal Bureau of Investigation Agent Michael Malone that he investigated serial murders; 3) whether the trial court erred by allowing the State to introduce hearsay but precluding the defense from introducing hearsay; 4) whether the trial court erred by denying Crump's motion to suppress evidence obtained from a warrantless search of his truck; 5) whether the trial court erred by failing to grant Crump's motion for judgment of acquittal because of insufficient evidence; 6) whether the trial court erred by denying Crump's motion for judgment of acquittal of first-degree murder because the State failed to prove premeditation; and 7) whether the trial court committed fundamental error by allowing the prosecutor to make improper closing arguments in the guilt and penalty phases of the trial.
Crump's first claim is that the trial court erred in admitting Williams rule evidence of the Smith murder. On May 6, 1988, the State filed a notice to rely on Williams rule evidence. In response, the defense filed a motion in limine to exclude the evidence because it was irrelevant and the prejudicial effect outweighed its probative value. The State argued that the similar fact evidence established a modus operandi and Crump's identity as Clark's killer. Over the defense counsel's objection, the trial court allowed the testimony concerning Smith's murder and Crump's subsequent confession. The evidence, however, did not include Crump's conviction for the first-degree murder of Smith.
Under the Williams rule, similar fact evidence is generally admissible, even though it reveals the commission of another crime, as long as the evidence is "relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Section 90.404(2)(a), Fla. Stat. (1989); see also Williams v. State, 110 So.2d 654, 662 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
Crump argues that the similarities between Smith's murder and Clark's murder *968 are not sufficiently unusual to serve as evidence of identity. For support, Crump cites Drake v. State, 400 So.2d 1217, 1219 (Fla. 1981), in which this Court found that the similar features of crimes, such as binding both victim's hands and meeting the victim at a bar, were not sufficiently unusual to point to defendant in that case, and therefore irrelevant to prove identity. We find Crump's argument without merit. This Court has upheld the use of collateral crime evidence when the common features considered in conjunction with each other establish a sufficiently unusual pattern of criminal activity. See Chandler v. State, 442 So.2d 171, 173 (Fla. 1983). Although the common features between Smith's murder and Clark's murder may not be unusual when considered individually, taken together these features establish a sufficiently unusual pattern of criminal activity. The common features of the two crimes include: both victims were African-American women with a similar physical build and age (Clark was twenty-eight years old, five feet, two inches and weighed 117 pounds; Smith was thirty-four years old, five feet, five inches tall and weighed 120 pounds); Crump admitted to giving a ride to each victim in his truck in the same area, off Columbus Boulevard in Tampa; Crump admitted to the police that he argued with each victim while giving the victims a ride in his truck; both victims' bodies showed evidence of ligature marks on the wrists; both victims died from manual strangulation; both victims' bodies were found nude and uncovered in an area adjacent to cemeteries within the distance of a mile from each other; and the victims were murdered at different sites from where the bodies were discovered. The cumulative effect of the numerous similarities between the two crimes establishes an unusual modus operandi which identifies Crump as Clark's murderer. Thus, we find no error in the admission of the Williams rule evidence.
Crump's second issue on appeal is whether the trial court erred by allowing the State's expert witness, Federal Bureau of Investigation special agent Michael Malone to testify, over objection, that he had investigated serial murders. During the State's direct examination, the following colloquy took place:
ASSISTANT STATE ATTORNEY: During your 14 years, have you ever lectured in the area of hair and fiber analysis?
MALONE: After being qualified as a hair expert for a few years, I started teaching the hair and fibers school down at the FBI Academy in Quantico.
Now, at the schools, we pull in local lab examiners, like from FDLE and whatever, and teach them the basics of hair and fiber exam. I taught extensively with the Air Force OSI. That's their investigators in their forensic program in Washington, D.C.
The last three years, I've been going all over the United States lecturing in international, national and regional seminars on the forensic aspect of serial murder investigations, because I've handled several major serial murder cases, including the Bobby Long case in the Hillsborough County area.
ASSISTANT STATE ATTORNEY: Have you ever published in the field of hair and fiber analysis?
MALONE: Yes, I published articles on the hair and fiber analysis or the role it plays in serial murder investigations. And then in 1984, as a result of a rash of serial murders, the Hillside Strangler, the Green River, the Wayne Williams and the Bobby Long case, the National Institute of Justice 
At this point defense counsel objected, and was heard outside the presence of the jury. Defense counsel argued that Malone's testimony prejudiced Crump by linking the instant case to serial killings. The trial court denied Crump's motions for a curative instruction and mistrial because the court found that the question went to Malone's qualifications as a hair and fiber analyst.
On appeal, Crump argues that Malone's testimony regarding Malone's previous investigations of serial murders is prejudicial because it implied to the jury that the instant case is similar to a serial murder. *969 We disagree and find that the trial court properly denied the motions for a curative instruction and a mistrial. Section 90.702, Florida Statutes (1989), allows a witness qualified as an expert by "knowledge, skill, experience, training, or education" to testify in a trial if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue. In establishing that a witness is an expert, counsel may examine the witness and lay the witness's qualifications before the jury to assist the jury in evaluating the expert's testimony. Charles W. Ehrhardt, Florida Evidence § 702.1 (1992). In the instant case, Malone's testimony about his extensive experience in other investigations was relevant to establish his qualifications as a hair and fiber analyst. Although section 90.403, Florida Statutes (1989), provides that "[r]elevant evidence is inadmissible when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury or needless presentation of evidence," we find that the probative value of Malone's testimony was not outweighed by any danger of unfair prejudice. Thus, Crump's second issue is without merit.
Crump next raises three issues concerning the admission of testimony at trial. The first issue concerns whether the trial court erred by permitting the State to offer Detective Parrish's testimony during the Williams rule portion of the trial. On direct examination, Detective Parrish testified that the investigation focused on a truck at the scene of Smith's murder because of the tire tracks found near the body and the witness's description of the truck. At this point, Crump objected to the testimony as hearsay. The trial court overruled the objection because it found that the State offered the testimony to explain the detective's subsequent acts in focusing on Crump's truck and not to prove the truth of the matter asserted. The record supports the trial court's ruling, and thus, we find that the trial court properly admitted the testimony.
The second issue concerns the trial court's limiting of Crump's questions to Detective Onheiser concerning the detective's interviews conducted during the investigation. Over the State's objection, the trial court allowed Crump to ask the detective whether the police interviewed or focused on other suspects during the investigation. The trial court, however, refused to allow Detective Onheiser to testify about the substance of his interviews. In particular, the trial court denied Crump's attempts to question the detective as to whether he had been given information that another suspect had raped two women near cemeteries and that the suspect had also been indicted for the murder of someone near a cemetery.
Crump argues that "where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission." Rivera v. State, 561 So.2d 536, 539 (Fla. 1990). Crump contends that because the detective's interviews tended to show that another suspect may have killed Clark, the trial court improperly limited this reverse Williams rule evidence. We reject Crump's argument that this evidence was reverse Williams rule evidence. In State v. Savino, 567 So.2d 892 (Fla. 1990), this Court stated that:
If a defendant's purpose is to shift suspicion from himself to another person, evidence of past criminal conduct of that other person should be of such nature that it would be admissible if that person were on trial for the present offense.
Id. at 894. The evidence here concerning the detective's interviews is hearsay that does not fall within one of the hearsay exceptions. The substance of the interviews does not constitute reverse Williams rule evidence because it would not have been admissible had the other suspect been on trial for the present offense. Thus, the trial court properly excluded these statements.
Finally, the third issue raised by Crump is whether the trial court erred in denying Crump's cross-examination of Malone concerning the fact that no semen was found in Clark. The record shows that during direct examination the State elicited *970 testimony from Malone concerning hair and fiber analysis. On cross-examination, Crump attempted to question Malone about the fact that no semen was found in Clark's vagina. The State objected to the line of questioning and the trial court sustained the objection. A review of the record shows that the trial court did not abuse its discretion in excluding the testimony because the testimony went beyond the scope of direct examination which concerned hair and fiber analysis. See § 90.612, Fla. Stat. (1989).
The next issue is whether the trial court erred in denying Crump's motion to suppress evidence obtained from the warrantless seizure and search of his truck. During the investigation of Smith's murder, the police found an imprint of tire tracks near Smith's body. The police officers also found a witness who saw Smith enter a truck on the night of her murder. The witness described the truck as a dark-colored truck with tinted windows, raised tires, and an amber rotating light on top of the truck cab which was broken on the passenger side. A police officer recognized that the witness's description matched Crump's truck. The witness subsequently identified Crump's truck from a police photo-pack. The police then seized Crump's truck on a public street, impounded the truck, and searched it. The search yielded a restraining device, a strand of head hair consistent with Clark's hair, and Clark's driver's license which was hidden underneath the carpet. Following the search, the police compared the tread on the truck's tires to the plaster casts made from tracks found near Smith's body and concluded that they were similar. Before trial, Crump moved to suppress the evidence gathered from the search because the police had failed to obtain a warrant before seizing the truck. At the suppression hearing, a detective testified that the police did not get a warrant because an assistant state attorney had stated that if the police seized the truck on a public street, the law did not require a warrant. The trial judge denied Crump's pretrial motion.
In California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the United States Supreme Court analyzed the "automobile exception" to the Fourth Amendment.[3] In Carney, the Supreme Court noted that the basis of the "exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation." Id. at 394, 105 S.Ct. at 2071. The Supreme Court then stated that the issue is
whether, apart from the lack of a warrant, this search was unreasonable. Under the vehicle exception to the warrant requirement "[o]nly the prior approval of the magistrate is waived; the search otherwise [must be such] as the magistrate could authorize."
Carney, 471 U.S. at 394, 105 S.Ct. at 2071 (quoting United States v. Ross, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982)). In the instant case, the relevant question is whether the police unreasonably seized and searched Crump's truck. We find that this search was not unreasonable because it was plainly one that a magistrate could authorize. Here, the record shows that the police officers relied on a witness's description and identification of Crump's truck as the vehicle that Smith entered on the night of her murder and the unique features of the truck with its amber rotating light which was broken on the passenger side, dark tinted windows, and large tires. The facts establish that probable cause existed to seize Crump's truck, thus we find that a magistrate could have authorized a warrant. We hold that the trial court correctly denied Crump's motion to suppress the evidence.
The next issue that Crump raises is whether the trial court erred by denying Crump's motion for acquittal because of the State's failure to produce sufficient evidence excluding a reasonable hypothesis of innocence. We find that the competent and substantial evidence of Clark's hidden driver's license; the restraining device found in *971 the truck; the ligature marks on Clark's wrists; expert testimony that hair found in Crump's truck was consistent with Clark's head hair; expert testimony that the head hair had been forcibly removed; and the Williams rule evidence support the conclusion that Crump murdered Clark.
The next issue is whether the trial court erred by denying Crump's motion for an acquittal of first-degree murder based on the State's failure to prove premeditation. Crump argues that the circumstantial evidence does not support a finding of premeditation, but shows that he killed Clark in a rage. We have held that premeditation can be shown by circumstantial evidence. Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982), overruled on other grounds, Pope v. State, 441 So.2d 1073 (Fla. 1983). In order to prove a fact by circumstantial evidence, the evidence must be inconsistent with any reasonable hypothesis of innocence. Cochran v. State, 547 So.2d 928, 930 (Fla. 1989). The question of whether the evidence fails to exclude any reasonable hypothesis of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, the verdict will not be reversed on appeal. State v. Law, 559 So.2d 187, 188 (Fla. 1989). Thus, the State must exclude every other reasonable inference that may be drawn from the circumstantial evidence to show that premeditation exists. Id. As this Court has stated:
Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of the victim is concerned.
Holton v. State, 573 So.2d 284, 289 (Fla. 1990) (quoting Larry v. State, 104 So.2d 352, 354 (Fla. 1958)), cert. denied, ___ U.S. ___, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991).
Applying these principles to the instant case, we find that there was substantial and competent evidence to support the jury's verdict of premeditation. The medical examiner testified that Clark had bruises on her head which indicated that she had been struck, as well as an abdominal injury, which caused slight hemorrhaging. However, the medical examiner found that these injuries did not cause Clark's death. The medical examiner concluded that Clark was strangled because of a fracture of the upper hyoid bone, a fracture of the thyroid cartilage, and small pinpoint hemorrhages in the victim's eyes. Moreover, the Williams rule evidence showed that Crump killed both Clark and Smith in a criminal pattern in which he picked up prostitutes, bound them, strangled them, and discarded their nude bodies near cemeteries. Because the circumstantial evidence standard does not require the jury to believe the defense's version of the facts on which the State has produced conflicting evidence, the jury properly could have concluded that Crump's hypothesis of innocence was untrue.
Crump next argues that the trial court committed fundamental error in allowing the prosecutor to make improper comments to the jury in both the guilt and penalty phases of the trial. First, Crump points to the beginning of the prosecutor's closing argument which contained a narrative that allegedly gained sympathy for the victim. Second, Crump argues that the prosecutor made an improper statement by characterizing the defense as an "octopus" clouding the water in order to "slither away." Crump further argues that during the penalty phase of the trial the prosecutor made two improper statements asking the jury to return a death sentence in order to send a message to the community. Crump concludes that because the prosecutor's statements are fundamental error, *972 this Court should reverse his conviction and sentence.
Fundamental error goes to the foundation of the case or the merits of the cause of action and can be considered on appeal without objection. Clark v. State, 363 So.2d 331, 333 (Fla. 1978), overruled on other grounds, State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). However, we have also recognized that wide latitude is permitted in arguing to a jury. Breedlove v. State, 413 So.2d 1, 8 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982). The control of comments made to the jury is within the trial court's discretion, and an appellate court will not interfere unless an abuse of discretion is shown. Occhicone v. State, 570 So.2d 902, 904 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2067, 114 L.Ed.2d 471 (1991); Breedlove, 413 So.2d at 8. A review of the record shows that the prosecutor's comments in the context of the closing argument in its entirety and the penalty phase do not constitute fundamental error. Absent fundamental error, we find that the defense counsel failed to preserve the issue for review, thus precluding appellate review. Davis v. State, 461 So.2d 67, 71 (Fla. 1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). Even if we considered these issues preserved for appeal, we find that the prosecutor's comments are not so outrageous as to taint the jury's finding of guilt or recommendation of death. See Bertolotti v. State, 476 So.2d 130, 133 (Fla. 1985).
Next, Crump raises four issues concerning the penalty phase: 1) whether the trial court's instruction on the cold, calculated and premeditated aggravating circumstance was unconstitutionally vague; 2) whether the trial court erred by finding the aggravating circumstance of cold, calculated, and premeditated; 3) whether the trial court erred by failing to consider and discuss all mitigation; and 4) whether the death sentence is disproportionate. We find the second issue dispositive, and therefore decline to address the other issues.
Crump argues that the State has failed to prove beyond a reasonable doubt that the murder was committed in a cold, calculated, and premeditated manner without any moral or legal justification. Section 921.141(5)(i). We agree. This Court has adopted the term "heightened premeditation" to distinguish this aggravating circumstance from the premeditation element of first-degree murder. See, e.g., Hamblen v. State, 527 So.2d 800, 805 (Fla. 1988); Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The State can show heightened premeditation by the manner of the killing, but the evidence must prove beyond a reasonable doubt that the defendant planned or arranged to commit the murder before the crime began. Hamblen, 527 So.2d at 805; Rogers, 511 So.2d at 533. However, the Court has found that heightened premeditation is inconsistent when the killing occurs in a fit of rage. Mitchell v. State, 527 So.2d 179, 182 (Fla.), cert. denied, 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988).
Applying these principles to the instant case, we disagree with the trial judge's finding that the State proved beyond a reasonable doubt that Crump killed Clark with the necessary heightened premeditation. In the sentencing order, the trial judge relied on the Williams rule evidence to show that heightened premeditation exists.[4] We find that the State did not prove beyond a reasonable doubt that Crump had a careful prearranged plan to kill the victim before inviting her into his truck. Thus, the State failed to prove beyond a reasonable doubt the aggravating circumstance of cold, calculated, and premeditated without any pretense of moral or legal justification.
*973 As to the remaining aggravating circumstance, we find that the record shows beyond a reasonable doubt that Crump had been previously convicted of another capital felony.[5] The sentencing order is unclear as to the statutory mitigating circumstances found by the trial court. The sentencing order shows that Crump "may have possibly" committed the capital felony while under the influence of extreme mental or emotional disturbance,[6] and that Crump's ability to appreciate the criminality of his conduct or conform his conduct to the requirements of law "may have possibly" been substantially impaired.[7] The sentencing order also shows that the trial judge considered "[a]ny other aspect of [Crump's] character or record, and any other circumstance of the offense as evidenced by expert and lay testimony in the case." The sentencing order in the instant case is sparse because it fails to specify what statutory and nonstatutory mitigating circumstances the trial judge found and what weight he gave these circumstances in determining whether to impose a death sentence. After reviewing the sentencing order and the record, we cannot determine that the trial judge's error in finding the cold, calculated and premeditated aggravating circumstance was harmless. Thus, the instant case must be remanded to the trial judge to reweigh the remaining aggravating circumstance and the statutory and nonstatutory mitigating circumstances established in the record.
Accordingly, we affirm Crump's conviction for first-degree murder, but vacate his death sentence and remand to the trial judge to reweigh the circumstances and resentence Crump.
It is so ordered.
OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs in result only.
GRIMES, J., concurs in part and dissents in part with an opinion, in which McDONALD, J., concurs.
GRIMES, Justice, concurring in part, dissenting in part.
I concur in affirming Crump's conviction of first-degree murder. However, I would also affirm the sentence of death.
At the outset, I believe there was sufficient evidence for the trial judge to have concluded that the murder was committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification. The evidence showed that Crump picked up both Clark and Smith in his truck in which there was a restraining device. It was determined that both victims had been bound because of ligature marks found on their wrists. Both victims were manually strangled to death. Hair forcibly removed from the head which had the same microscopic characteristics as Clark's hair was found on the carpet of Crump's truck. There was sufficient circumstantial evidence to indicate a planned killing.
As for the mitigating circumstances, the judge found only that the murder was committed while Crump "may have possibly" been under the influence of extreme mental or emotional disturbance and that Crump's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law "may have possibly" been substantially impaired. These findings, which were directly predicated upon the testimony of the psychologist who examined Crump, indicate that the mental mitigating circumstances did not reach the statutory standards of mental mitigation. While the judge did not specifically delineate any other mitigation, the record reflects at most that Crump was a supportive family member and helpful to others.
I believe the judge properly weighed the aggravating and mitigating circumstances. Especially in light of the fact that Crump *974 has committed two murders, the sentence of death should be upheld.
McDONALD, J., concurs.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Williams v. State, 110 So.2d 654 (Fla.) cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); the Williams rule is codified in section 90.404(2)(a), Florida Statutes (1987).
[3] U.S. Const. amend. IV.
[4] The sentencing order provides in pertinent part:

The defendant, while in possession of a restraint device, invited the victim into his truck, bound her wrists, and after manually strangling her, dumped her nude body near a cemetery.
[5] § 921.141(5)(b), Fla. Stat. (1989).
[6] § 921.141(6)(b), Fla. Stat. (1989).
[7] § 921.141(6)(f), Fla. Stat. (1989).