651 So.2d 1159 (1994)
Kenneth WATSON, Appellant,
v.
STATE of Florida, Appellee.
No. 79139.
Supreme Court of Florida.
November 3, 1994.
Rehearing Denied March 21, 1995.
*1160 Bennett H. Brummer, Public Defender and Robert Kalter, Asst. Public Defender, Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Anita J. Gay, Asst. Atty. Gen., Miami, for appellee.

ON REHEARING GRANTED
PER CURIAM.
Kenneth Watson appeals his conviction for murder and the ensuing sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On October 31, 1988, Mrs. Ella Hickman entered her home and found a stranger within. The stranger, using a long slender sharp object, stabbed Mrs. Hickman six times about the head and neck; a stab to the carotid artery was fatal. Watson was charged with and the jury found him guilty of first-degree murder, armed burglary with an assault, and armed robbery of Mrs. Hickman. The judge imposed a sentence of death,[1] and Watson now appeals his murder conviction and death sentence.[2]

Guilt Phase
Watson's first issue asserts that the trial court erred in denying his challenges for cause against prospective jurors Webster, Benton, and Vento.[3] We disagree. During voir dire, the trial judge instructed the panel as follows:
Now, the other principle that I want to address with you and it's a very important constitutional right that the defendant has, is that he does not have to prove anything... . [T]hat burden is entirely on the State... . [T]he defendant has the absolute right to remain silent and if he exercises that right you cannot use that against him in any way.
....
... [T]he attorneys don't have to do anything either, they could sit there and do cross word puzzles and if the State doesn't meet the burden of proof, proving the defendant guilty beyond and to the exclusion of every reasonable doubt, the fact that the attorneys didn't do anything cannot play a part, cannot say well, they didn't do anything so he must be guilty.
After this instruction was given, the judge turned to topics unrelated to the burden of proof. Later in the proceedings, the state and defense attorneys were allowed to ask questions of the panel. The questioning relevant to our decision is as follows:
MR. SMITH [defense counsel]: Okay. What if we didn't do anything? I'm not saying that's going to happen, but I just want to know if that was the situation. *1161 The law says, the rule is that we don't have to do anything, we don't have to prove anything, we don't have to prove to, we have no responsibility, they do?
....
MR. SMITH: Right. Who feels the same way as Ms. Mena, that it would concern them if we didn't prove anything by bringing witnesses or bringing evidence?
Ms. Webster, that would concern you?
MS. WEBSTER: Yes, that would.
MR. SMITH: Why would it concern you? Same reason or for a different reason, you wonder why what we're doing here?
MS. WEBSTER: I think he should have the opportunity to have witnesses come in and testify for him.
MR. SMITH: Let's say we do have the opportunity but we choose not to do it, would it concern you?
MS. WEBSTER: Yes, it would because I think of that he was not being fairly represented in the criminal justice system.
MR. SMITH: Would it cause you to wonder whether or not Mr. Watson was guilty if we didn't put on any evidence?
MS. WEBSTER: I can't say that I would think that in my mind because in my mind I think he's innocent until proven guilty.
MR. SMITH: Okay. Let's say that they present their evidence and they rest their case and then the judge says to us what evidence do you have to present and we say none, would that concern you, would you think that Mr. Watson's probably guilty because we did that?
It's a hard question.
MS. WEBSTER: It is.
MR. SMITH: What do you think? The reason I'm asking you this is because there's a rule that says we're not required to do anything and if it would be difficult for you to follow the rule, as I said, the worst that happens is that you're not on the jury in this case. And if that rule is 
MS. WEBSTER: I don't think I could accept the fact that he did not present any evidence.
The questioning of Webster was terminated at this point and the relevant examination of venireman Vento was as follows:
MR. SMITH: Okay. What about the second row, does anybody here feel that it would make them think Mr. Watson's guilty if we didn't prove anything, we didn't present witnesses, didn't present evidence?
....
Mr. Vento, how about that?
MR. VENTO: I don't think nothing, it's a very hard question.
MR. SMITH: I know it is, I don't ask easy questions.
MR. VENTO: You have to present something.
MR. SMITH: Well, what if we didn't present any witnesses or didn't put on any evidence and the judge told you we don't have to, but it bothers me and I'm thinking about it. You see, it's tough to try juggle those two things.
MR. VENTO: Would bother me.
MR. SMITH: Could you follow the law if the law said we didn't have to?
MR. VENTO: I don't know.
MR. SMITH: That would cause you some problem?
MR. VENTO: Yes.
The questioning of Vento was terminated after this answer. Neither the court nor the state attempted to rehabilitate Webster or Vento or to determine whether in light of previous answers they possessed a state of mind that would enable them to render impartial verdicts based solely on the evidence presented and the instructions given by the judge.[4] Watson's attempt to have the two venirepersons removed for cause was denied and he was forced to remove them by using peremptory challenges. Watson exhausted his peremptory challenges, requested three *1162 additional challenges, and identified the jurors he would strike. The court granted one additional challenge. Watson asserts that the trial court erred in denying his challenges for cause and that the denial of these challenges forced him to exhaust his peremptories, thus resulting in a trial by objectionable jurors. At the outset, it is well to remember the standard by which we review this issue. In Mills v. State, 462 So.2d 1075, 1079 (Fla.), cert. denied, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985), this Court stated:
The competency of a juror challenged for cause presents a mixed question of law and fact to be determined by the trial court. Manifest error must be shown to overturn the trial court's finding.
A fair reading of juror Webster's colloquy indicates that her main concern was that if Watson's lawyers did not call any witnesses, he would not be getting fair representation. She did not indicate that she would find him guilty if he presented no evidence. To the extent that her later answers could be characterized as ambiguous, the trial judge was clearly within his discretion to deny the motion to excuse for cause. Because of counsel's obscure questions and the short venire on the subject, it is difficult to discern what caused juror Vento to say that if Watson put on no evidence he did not know whether he could follow the law. However, this was not the reason Vento was challenged. The motion to excuse Vento for cause was premised on the fact that he had said that he had a burglary the previous night. Thus, Watson's attorneys waived any objection they might have had to Vento. Since the trial judge gave Watson one additional peremptory challenge, he is not entitled to reversal unless both jurors were improperly excused. Clearly, he has failed to demonstrate error with respect to both of the jurors.
Watson's second issue asserts that juror Abernott's phone call was evidence of her partiality, thereby depriving him of his right to an impartial jury. We disagree. Before the commencement of opening statements, the trial judge instructed the jury "not [to] form any definite or fixed opinion on the merits of the case until you've heard all the evidence." During a phone conversation with her employer, and before the presentation of evidence, Abernott opined that the case was "open and shut." Upon learning of the phone conversation, the trial judge questioned Ms. Abernott and concluded that her statement referred to the length of the trial and was not a comment upon Watson's guilt or innocence. The judge declined to excuse the juror for cause. Our review of the transcript, including the trial judge's inquiry into the matter, convinces us that the record supports the judge's determination that Abernott had not formed an opinion relative to Watson's guilt before hearing the evidence. This issue is decided against Watson. We also find that prospective juror Moss' voir dire comment did not violate Watson's right to an impartial jury.[5] When faced with a similar circumstance in Randolph v. State, 562 So.2d 331, 337 (Fla.), cert. denied, 498 U.S. 992, 111 S.Ct. 538, 112 L.Ed.2d 548 (1990), we held that the venire was not tainted *1163 when a prospective juror was excused after stating that the victim had been "brutally murdered." In so finding, we held that the statement "did not relate to Randolph's culpability but merely briefly described the nature of the crime." Id. at 337. Based on Randolph, we find that the trial court properly refused Watson's request to strike the venire. There is also no merit to Watson's claim that the trial court violated his right to an impartial jury when it allowed the jurors to submit questions to the witnesses.[6] As both Watson and the State concede, this practice has been condoned as permissible trial procedure. See Shoultz v. State, 106 So.2d 424 (Fla. 1958); Ferrara v. State, 101 So.2d 797 (Fla. 1958). We decline to revisit this issue.
We find no merit in issues five and eight, which in essence assert that the state's opening statement improperly appealed to the sympathy of the jury and was an improper use of victim impact evidence.[7] It is within the trial judge's discretion to determine when an attorney's argument is improper, and such a determination will not be upset absent an abuse of discretion by the lower court judge. Breedlove v. State, 413 So.2d 1, 8 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982); see also Crump v. State, 622 So.2d 963 (Fla. 1993). Within his or her courtroom, a judge is not prohibited from granting attorneys wide latitude when making legitimate arguments to the jury. The arguments may also include any logical inferences. Id. When called to review these arguments, we consider each case within the totality of its own special circumstances. In this instance, the court sustained the defendant's objections and offered to give a curative instruction, which the defendant refused. We find no abuse of discretion in the trial court's denial of Watson's motion for mistrial. See Duest v. State, 462 So.2d 446, 448 (Fla. 1985) ("The proper procedure to take when objectionable comments are made is to object and request an instruction from the court that the jury disregard the remarks.").

Penalty Phase
Watson asserts that the state violated Florida Rule of Criminal Procedure 3.220(a)(1)(x) (1988),[8] when the state withheld *1164 an oral statement made by its expert witness, and that the trial court failed to conduct an adequate hearing pursuant to Richardson v. State, 246 So.2d 771 (Fla. 1971) (when a discovery violation occurs, the trial court shall conduct an inquiry into the circumstances surrounding the violation). We disagree with Watson's assertion that the expert's oral statement was discoverable. When we read Florida Rules of Criminal Procedure 3.220(a)(1)(ii) (1988)[9] and 3.220(a)(1)(x) (1988), in tandem, we are lead to the conclusion that the reference to "statements" is limited to written statements or contemporaneously recorded oral statements.
Watson's seventh issue asserts that the trial court failed to properly instruct the jury as to when the death penalty is required. Our review of the record indicates that Watson failed to object to the jury instructions after the judge instructed the jury, and failed to submit a specific jury instruction, which was denied by the court. Therefore, he has not preserved this issue for appellate review. See Sochor v. Florida, 504 U.S. 527, 534, 112 S.Ct. 2114, 2120, 119 L.Ed.2d 326 (1992) (to preserve an objection, the party must object after the jury has been instructed, unless the party's previous request for a specific jury instruction was denied). We also find that the trial judge's sentencing order properly evaluated each statutory and non-statutory mitigating circumstance proposed by the defendant, determined if the circumstances were supported by the greater weight of the evidence, and properly weighed them against the aggravating circumstances. See Campbell v. State, 571 So.2d 415 (Fla. 1990). Based on this finding, we find no merit to Watson's claim that the trial judge failed to consider and weigh all mitigating circumstances. We reject Watson's final issue, that Florida's capital sentencing statute is unconstitutional on its face and as applied. See Patten v. State, 598 So.2d 60 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993).
Based on the above, we affirm Watson's conviction for murder and sentence of death.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The jury recommended the death penalty by a vote of ten to two. The court found aggravating circumstances of: (1) a previous conviction of another capital felony or of a felony involving the use or threat of violence; (2) a capital felony committed while engaged in a robbery and/or burglary; and (3) heinous, atrocious, or cruel. There were no mitigating circumstances.
[2] Watson asserts the following issues: (1) his challenge for cause against prospective jurors was improperly denied; (2) a denial of the right to an impartial jury based on a juror's phone call; (3) a denial of the right to an impartial jury based on a juror's statement that the crime was heinous; (4) the trial court improperly allowed the jurors to become advocates; (5) the state improperly appealed to the sympathy of the jury; (6) the trial court failed to conduct an adequate Richardson hearing; (7) the jury instructions were improper; (8) the state improperly argued victim impact evidence; (9) the trial judge failed to weigh all mitigating circumstances; and (10) the death sentence is unconstitutional.
[3] Based on our review of the record, Watson's challenge of Benton is clearly unwarranted. We will, however, address the issues surrounding Webster and Vento.
[4] When prospective jurors express doubt in their ability to respect the defendant's right to remain silent either the prosecutor or the judge must "make sure the prospective juror can be an impartial member of the jury." Bryant v. State, 601 So.2d 529, 532 (Fla. 1992).
[5] During voir dire, when asked by defense counsel if he thought death was an appropriate penalty for first-degree murder, Moss, who had read a newspaper article on the murder, replied:

MR. SMITH [defense counsel]: Okay. What about the question to the second row, does anybody feel that because the crime of first degree murder is proven and someone's convicted, that the death penalty is the only penalty. Now you've been told that there are two in Florida, but you have the right to have your own opinion and I want to know what your opinion is, that's the only penalty.
Mr. Moss?
MR. MOSS: Okay, knowing a little bit about what happened, the crime itself, and the violent nature of it, the heinous nature of it in my opinion, I think I would have a lot of trouble trying to find mitigating circumstances if, if the defendant was convicted, I would have trouble finding mitigating circumstances against the death penalty in this particular case.
MR. SMITH: We need a side bar.
MR. MOSS: That's my personal opinion.
THE COURT: Save it.
MR. SMITH: What about my question about the death penalty being the only penalty?
MR. MOSS: Oh, no, no, in general? General.
MR. SMITH: Right?
MR. MOSS: I believe that there are situations where perhaps life, a life sentence would be in order.
Thereafter, the trial court granted Watson's request to strike Moss for cause.
[6] The juror would write the question down, give it to the judge, who would consult with the state and defense attorneys, and if the question was proper, the judge would present it to the witness.
[7] The relevant comments are as follows:

MR. HERSKOWITZ [Prosecutor]: The wife of 15 years of Donnie Hickman. She was known affectionately by her friend as Sister Ella, Sister Hickman.
MR. SMITH [Defense Counsel]: Objection and I ask for a side bar.
....
MR. HERSKOWITZ: Known affectionately by her good friends as Sister Ella, or Sister Hickman, by the younger people as mama.
She worked hard as a housekeeper four days a week 
MR. SMITH: Objection, irrelevant and it's improper opening.
....
MR. HERSKOWITZ: Think about what Ella had gone through.
MR. NALLY [Defense Counsel]: Objection, Your Honor, this is improper opening argument.
MR. SMITH: This is Golden Rule and we'd ask you for a side bar.
THE COURT: Sustained.
....
MR. HERSKOWITZ: Some time after four p.m. the Reverend Donnie Hickman came home... .
Ella, Ella, are you in there? He opens it up and lying at his feet in a pool of blood is his wife of 15 years bound by her neck and her ankles.
His whole life shattered.
MR. SMITH: Objection.
MR. NALLY: Objection, Your Honor.
THE COURT: Sustained.
....
THE COURT: I'm going to get started. You want me to give a curative instruction, I'll give it to them at this time.
MR. SMITH: No, I want to make argument. I think we're entitled to a mistrial.
THE COURT: I'm not going to grant a mistrial. You don't want a curative instruction?
MR. NALLY: As to what?
THE COURT: As to the comment, whole life shattered.
MR. NALLY: I don't want to bring it up again this morning.
[8] Under the rule, the following things are discoverable:

(x) Reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons.
[9] The relevant portion states:

(ii) The term "statement" as used herein means a written statement made by said person ... or which is a substantially verbatim recital of an oral statement made by said person ... and recorded contemporaneously with the making of such oral statement... .