PER CURIAM.
Bonhomme Beaussicot appeals his conviction and sentence for sexual battery with a deadly weapon and false imprisonment. The trial court permitted the State to introduce Williams[1] rule evidence, through the testimony of M.C., in the M.B. trial for the purpose of showing appellant’s alleged common plan or scheme and to rebut his defense of consent. We hold that this was error and reverse and remand for a new trial.

The M.B. incident

The charges stemmed from an incident involving appellant and M.B., the alleged victim. At trial, M.B. testified that on the night of the incident, she left work at 5:00 p.m. and met her former boyfriend for dinner and drinks. She left dinner around 9:00 p.m. and spent another hour or so visiting other friends. M.B. then walked to a nearby gas station to use a pay phone. While at the gas station, she saw appellant drive past her in a white van and circle back. She had been a prostitute in the past and thought he was looking for a “date.” She talked to appellant through the passenger window and agreed to have sex with him for $20. She got in the van, and appellant told her he was going to park somewhere private.
Thereafter, appellant stopped and told M.B. to get in the back of the van. When M.B. asked for the money first, appellant pulled out a gun and told her to do whatever he said. M.B. complied. Appellant then forced M.B. to have sexual intercourse. He kept the gun by his side during the sexual episode. Appellant then ordered M.B. to get out of the van, told her to walk forward, and told her that if she yelled out, he would shoot her in the back.

The M.C. incident

The Williams rule evidence at issue involved an incident in which appellant allegedly sexually battered another woman, M.C., approximately one week after the attack on M.B. M.C. described the attack as follows. M.C. was walking home from the library, at around 7:00 p.m., when she observed a white van parked on the corner of an intersection. The driver of the van, who turned out to be appellant, approached M.C. for directions. When she turned her back to point out the directions, *474 appellant pointed a gun at her and told her to get in the van. She got in the passenger seat of the van. Appellant then demanded money. M.C. offered all the money she had. Appellant said that was not enough and asked for bank or credit cards. Appellant then drove a short distance, pulled into an alley, and stopped the van. He told M.C. to get in the back of the van and to take her clothes off. She complied. Appellant then put the gun between the seats and forced M.C. to have sexual intercourse with him.
After getting dressed, appellant told M.C. that they were going to a bank. The gun was still on the floor within appellant’s reach. When they arrived at the bank, he gave M.C. back her bank card and walked with her to the automated teller machine with the gun pointed at her. M.C. withdrew $460, which she gave to appellant. When they got back in the van, appellant asked her where she lived and dropped M.C. off near her home. He told her to walk straight and instructed her not to look back.
The jury found appellant guilty as charged, and the trial court adjudicated him guilty in accordance with the verdict. This appeal followed.
This court reviews a trial court’s ruling on the admissibility of Williams rule evidence for abuse of discretion. McWatters v. State, 36 So.3d 613, 628 (Fla.2010). The codification of the Williams rule provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
§ 90.404(2)(a), Fla. Stat. (2010). On appeal, this court “considers both similarities and dissimilarities between the collateral crimes and the charged offense when reviewing whether ‘a sufficiently unique pattern of criminal activity [justifies] admission.’ ” McWatters, 36 So.3d at 627 (quoting Peek v. State, 488 So.2d 52, 55 (Fla.1986)).
To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses.... In addition to the above requirements, the evidence must be relevant to a material fact in issue such as identity, intent, motive, opportunity, plan, knowledge, or absence of mistake or accident.
Macias v. State, 959 So.2d 782, 784 (Fla. 4th DCA 2007) (quoting Heuring v. State, 513 So.2d 122, 124 (Fla.1987)).
In McWatters, the supreme court affirmed the trial court’s admission of collateral crimes evidence:
As in Williams,[2] we find that the evidence in this case established that McWatters likewise employed a common plan or scheme to gain access to his victims. McWatters knew each of his victims. On the nights of the attacks, he engaged in conversation with the women in public settings but offered them either drugs or a shower to convince them to leave the public settings and accompany him to dark, secluded locations. He refrained from attacking the victims *475 until they reached that secluded location ....
[[Image here]]
... The crimes occurred from around March 28, 2004, through May 31, 2004, within three miles of one another. The victims were all white women and were known to have substance abuse problems. The attacks all occurred at night in dark, secluded areas. The victims were all found nude from the waist down, with their upper clothing pushed up into a similar position, and the cause of death in each case was manual strangulation. Each of the women was found near where she was last seen walking with McWatters, and an effort had been made to conceal each body.
36 So.3d at 628-29.
In this case, we acknowledge that there are similarities between the M.B. and M.C. incidents: Appellant’s initial contact with both victims was consensual; appellant forced both victims to have sex -with him at gun point; and both sexual batteries took place inside appellant’s van in the same general vicinity. However, we agree with appellant that the two incidents were not “strikingly similar” enough to warrant admission of the M.C. incident as Williams rule evidence in the M.B. trial.
First, in contrast to Williams and Crump,[3] the victims were not strikingly similar: M.B. was a prostitute (or at least, she was prostituting on the night in question); M.C. was not. Second, appellant’s method of approaching each victim — and getting them into his van — was different in both instances: M.B. initiated contact with appellant, while he was in his van, while appellant initiated contact with M.C., by asking her for directions while he was outside of his van. Thus, the evidence shows that M.B. voluntarily entered the van, while M.C. did not. Finally, the two incidents are different when examining what transpired once each victim entered the van. Regarding M.B., appellant immediately refused to pay her for sex, and instead, forced her to have sex by threatening her with a gun — he did not rob, or attempt to rob, her. In contrast, upon M.C. entering his van, appellant immediately attempted to rob her; it was not until after M.C. revealed that she had only $10-$15 that appellant forced her to have sex with him.
The trial court relied on Conde v. State, 860 So.2d 930 (Fla.2003). We find Conde distinguishable. Unlike this case, the collateral crimes admitted over defense objection in Conde were “strikingly similar”: (1) Each victim was a prostitute who worked within a limited area and was killed by strangulation late at night; (2) each body was found within a small radius of Conde’s home, re-dressed and face down in a seemingly posed position; (3) the lividity patterns of each body indicated it had been initially on its back and then turned face down; (4) matching fiber, tire, DNA, and semen evidence was found on many of the bodies; and (5) the word “third” was written on the third victim, indicating the serial nature of the crimes. Id. at 944. We find the facts of this case to be more like Helton v. State, 365 So.2d 1101, 1102 (Fla. 1st DCA 1979) (“The only similarities between the two incidents are that they occurred in wooded areas, the victims allegedly did not consent to the encounters, and the victim in each case hailed a passing car for help. There are numerous dissimilarities.”).[4]
*476 We also agree with appellant that the trial court erroneously relied on the fact that appellant wiped himself with the victims’ clothing, and the fact that appellant did not use a condom with either victim during sex. The fact that appellant wiped himself clean with the victims’ clothing after he committed the sexual batteries does not demonstrate a common scheme or plan to lure the women into his van. Likewise, the fact that appellant did not use a condom with either victim during sex also is not indicative of consent or a lack thereof and does not tend to show a common scheme or plan utilized by appellant to gain access to the women in order to sexually abuse them.
“Erroneous admission of collateral crimes evidence is presumptively harmful.” Czubak v. State, 570 So.2d 925, 928 (Fla.1990) (citing Castro v. State, 547 So.2d 111, 116 (Fla.1989)). On this record, the State has not proved that the erroneous admission of M.C.’s testimony was harmless beyond a reasonable doubt.

Reversed.

WARNER, POLEN and DAMOORGIAN, JJ., concur.

. Williams v. State, 110 So.2d 654, 659-60 (Fla.1959).

. Williams v. State, 621 So.2d 413 (Fla.1993).

. Crump v. State, 622 So.2d 963 (Fla.1993).

. In Williams, the supreme court disagreed with Helton to the extent that "other crime evidence is never relevant to the issue of consent.” Williams, 621 So.2d at 416. However, the Williams court approved of the result reached in Helton: "[In Helton], there *476 was nothing about the prior incident other than the fact that the woman involved did not consent that shed any light on whether the victim of the charged crime consented.” Id.