DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILIP GROSS GILLIG, V,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-1027

[February 22, 2023]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Robert Panse, Judge; L.T. Case No. 50-2021-CT-002607-AXXX-MB.

Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

The defendant appeals his conviction of misdemeanor driving under the influence ("DUI") and contends that the trial court erred in admitting evidence that he committed a DUI five years earlier. To minimize the risk of wrongful conviction, similar fact evidence must meet strict standards of relevance which did not occur in the trial below. Because there was no legal basis to introduce prior crime evidence, we must reverse.

*Introduction*

The state charged the defendant with DUI, alleging he was under the influence of controlled substances. Prior to trial, the state noticed its intent to introduce collateral crime evidence pursuant to section 90.404(2)(a), Florida Statutes (2021), which permits similar fact evidence of other crimes or acts, known as *Williams*[1] rule evidence, under limited circumstances. Specifically, the state sought to introduce testimony from

---

[1] *Williams v. State*, 110 So. 2d 654 (Fla. 1959).

an officer who arrested the defendant for a DUI in 2016, and the toxicologist who tested the defendant's urine sample for controlled substances in connection with the 2016 arrest. Under the state's theory, the two DUI cases were strikingly similar: law enforcement responded to a report from a concerned citizen, the defendant was found slumped over the wheel of his vehicle, he was unsteady on his feet when roused, and the substances found in his urine sample in each case almost matched. The state also asserted the evidence was relevant to rebut the defense theory that the defendant was unaware of the effects the controlled substances— prescribed medications—would have on him and to establish that "this was neither a mistake nor an accident because Defendant had knowledge of the effects of the drugs on him and his normal faculties."

### *Pre-Trial Hearing*

A non-evidentiary hearing was held on the state's notice. Defense counsel argued the cases were not uniquely similar, and he disputed the state's characterization of the defense theory as premised on "mistake," asserting "that's not our defense" and if it was, "I do believe I would open the door for impeachment." The trial court opined that the defense would also open the door if the defense was that the medication "didn't impair him."

The trial court ruled the evidence was admissible *Williams* rule evidence based on the unique similarity between the cases: "his sleeping behind the wheel, sitting in the seat, or curled in the seat. Being unresponsive. Having a member of the public try to wake the person up and call it in as a 911 call . . . . He did have six of the same drugs in his system that were also in his system in this 2021 case." The court opined that this was not a typical DUI case: "[T]he facts are not . . . on par with what would be in most DUI cases . . . . There are . . . some very unique and unusual factors in this case that makes this case stand out different than maybe your typical DUI case."

The trial court further ruled the state could introduce the evidence "to show that the defendant was aware of and had knowledge of the effects of these drugs based upon what happened to him in 2016, and then having those same drugs in his system in 2021, to show not only knowledge, but absence of there not being any mistake or accident in terms of the effect and knowing what the effect of those would be on the defendant is highly relevant in this case." The court agreed with the state that the evidence was not only permissible for rebuttal, but also "to show that the defendant is guilty of DUI."

## *Trial*

The case proceeded to trial. The defense theory was that the defendant was not impaired. He acknowledged taking medication but asserted that he fell asleep because he was sleep-deprived from working a twelve-hour day, had not eaten all day, and suddenly took ill during his drive home.

The state's evidence at trial established that, based on the report of a concerned citizen, law enforcement officers responded to a report of an unresponsive male behind the wheel of a parked vehicle. Upon their arrival, they observed a pickup truck parked in a roadway leading to a gas station. The truck was impeding traffic. One of the officers approached the driver side of the truck and saw that the gear shift was in drive, the brake lights were on, and the defendant's foot was on the brake. The defendant was slumped over the steering wheel, and he was "foaming from the mouth and nose area." The defendant did not stir when they banged on his window, so they entered the vehicle to wake the defendant. Paramedics were called to the scene, and they confirmed the defendant did not need medical assistance.

An investigator from the DUI unit arrived and observed the defendant leaning on the tailgate of his truck. The defendant told the investigator he was "sitting here in my truck listening to music eating a big ol' sandwich and fell asleep," as he "was up early." The defendant told the investigator that he had "screws in my ankle" from a 2003 bicycle accident. He disclosed that he takes "Adderall, Klonopin," but he denied consuming any alcohol that day or taking any unprescribed medication. No odor of alcohol was emanating from the defendant. The defendant agreed to undergo field sobriety exercises, which he had some difficulty performing. The defendant was arrested and transported to the breath alcohol testing facility where the breathalyzer machine indicated no alcohol consumption.

The defendant agreed to submit a urine sample, which tested positive for numerous controlled substances. The state's toxicologist testified as to the effects of those substances on a person's cognitive and motor function. She had reviewed the videos admitted into evidence, and she speculated that the defendant exhibited behavior which was consistent with those effects. She acknowledged that she had never met or observed the defendant in person, and she could not say how much of each substance the defendant had ingested. She acknowledged that people can develop a tolerance to controlled substances if taken for a period of time, and that she could offer a more meaningful opinion if she knew the dosage which the defendant had taken.

The state did not present the testimony of the officer who had arrested the defendant in 2016, as the officer was out of the country, and the trial court denied the state's motion for continuance. The court indicated the state could call the officer for "genuine rebuttal" if he arrived after the defendant testified.

The defendant testified that he takes medication prescribed by a doctor for various issues, and he had taken medications on the day of his arrest. At the end of a twelve-hour workday, he stopped to purchase a sandwich and to take his medication. He began to feel sick but set out to return to his morning worksite. He began feeling "very nauseous," he had a "major headache," and his stomach hurt. He parked, ate the rest of his sandwich, and fell asleep. He denied being impaired and suggested that an old ankle injury negatively affected his performance on field sobriety exercises. Pharmacy records were entered into evidence.

On cross-examination, the defendant denied that the medications make him tired, explaining that "*now that I'm used to the medications . . .* [t]hey do not [make me tired]." (Emphasis added). He fell asleep at the breath testing facility because he was "exhausted." When asked if he was a light or heavy sleeper, he explained that it depends on various factors, such as "how much sleep I've gotten . . . how tore up is my body . . . . Am I running on no sleep? Yeah, I'm going to probably . . . sleep hard." The following exchange occurred:

> State: And you will randomly, while driving, fall asleep for no reason?
>
> Defense: Objection . . . Argumentative.
>
> Court: Overruled.
>
> Defense: And relevancy.
>
> Court: Overruled.
>
> State . . . While you're driving, you'll just randomly fall asleep for no reason?
>
> Defendant: No.
>
> State: But on this day . . . you happened to fall asleep for no reason?

Defendant: I'm not saying there's no reason. I'm saying I don't know.

State: Was this out of the ordinary for you?

Defendant: Yes.

Defense counsel objected on the grounds of relevancy and the trial court overruled the objection, finding the question was within the scope of direct and that "[t]he door was open" by the defense "line of questioning." The court reaffirmed its previous ruling that the evidence was admissible as *Williams* rule evidence. The court also ruled the state could call the officer as a rebuttal witness:

> So the rebuttal testimony is permissible because presumably, based on what I've seen from the probable cause affidavit and the test results from 2016, there's evidence to show that medication does make him tired and impaired because he was sleeping behind the wheel in 2016, just like he was in this case. Secondly, the state is also permitted to utilize the *Williams* rule evidence to show knowledge, that is the defendant knew because of that prior incident and being arrested for DUI, that he does have a – such an effect of being tired, or falling asleep, or being impaired as a result of taking that medication.

The state presented the testimony of the officer, after the trial court instructed the jury to consider the evidence for the limited purpose of "knowledge and/or the absence of mistake or accident." The officer testified that in 2016 he responded to a call regarding "a male passed out sleeping behind the wheel." When he arrived, the defendant's vehicle was "running" and the defendant was in the driver's seat. He was legally parked and the gear shift was in the park position. The defendant submitted to field sobriety exercises and had trouble performing them as instructed. The defendant told the officer that he took medication. He was arrested for DUI. The trial court read the jury a stipulation by the parties that a toxicology analysis of the defendant's urine sample in the 2016 case contained all but one of the substances found in the defendant's urine sample in the instant case.

### *This Appeal*

On appeal from his conviction, the defendant argues that the trial court erred in admitting the evidence of the 2016 DUI because it was not relevant

5

and the two incidents were not sufficiently similar for admission as *Williams* rule evidence. The evidence, the defendant asserts, was used by the state solely to show propensity. He also argues he did not open the door to the evidence by testifying as he did and any evidence of the 2016 DUI did not rebut any part of his testimony.

The state counters by suggesting that the evidence was relevant to prove the absence of mistake or accident, and that it was admissible to rebut the defense theory. Further, the state asserts, the defendant opened the door to the *Williams* rule evidence by testifying that his medications did not cause his sleepiness.

We review a court's ruling on admission of evidence for abuse of discretion, as limited by the rules of evidence. *Nardone v. State*, 798 So. 2d 870, 874 (Fla. 4th DCA 2001). "The improper admission of rebuttal evidence is subject to a harmless error analysis." *Ivory v. State*, 821 So. 2d 1258, 1260 (Fla. 4th DCA 2002). "[T]he erroneous admission of irrelevant collateral crimes evidence 'is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.'" *Robertson v. State*, 829 So. 2d 901, 913-14 (Fla. 2002) (quoting *Castro v. State*, 547 So. 2d 111, 115 (Fla. 1989)).

"Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." § 90.404(2)(a), Fla. Stat. (2022); *see also* § 90.401, Fla. Stat. (2022) ("Relevant evidence is evidence tending to prove or disprove a material fact."). This court has elaborated on the admission of *Williams* rule evidence:

> To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses . . . . In addition to the above requirements, the evidence must be relevant to a material fact in issue such as identity, intent, motive, opportunity, plan, knowledge, or absence of mistake or accident.

6

*Beaussicot v. State*, 95 So. 3d 472, 474 (Fla. 4th DCA 2012) (alteration in original) (quoting *Macias v. State*, 959 So. 2d 782, 784 (Fla. 4th DCA 2007)).

Here, the defendant was charged with and convicted of DUI pursuant to section 316.193(1), Florida Statutes (2021), under which the state was required to prove that: (1) the defendant drove or was in actual physical control of a vehicle, and (2) while driving or in actual physical control of a vehicle, the defendant was under the influence of a controlled substance to the extent his normal faculties were impaired. *See* § 316.193(1)(a), Fla. Stat. (2021); Fla. Std. Jury Instr. (Crim.) 28.1.

To the extent the trial court found the evidence was admissible *Williams* rule evidence, this was error. Even if the two DUIs were strikingly similar, evidence of the prior DUI was not "relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." § 90.404(2)(a), Fla. Stat. (2021). Based on the elements which the state had the burden of proving, evidence that the defendant had previously operated a motor vehicle while impaired by his prescription medication was not relevant, as the previous episode did not tend to prove or disprove that he was driving or in actual physical control of the truck or was under the influence of a controlled substance to the extent his normal faculties were impaired on February 17, 2021.

While the state argues the evidence was admissible to prove absence of mistake or accident, the absence of mistake or accident was not at issue – the state did not have to prove the absence of mistake or accident under section 316.193(1)(a), and the defendant did not assert a mistake or accident. The defense theory was not that the defendant's impairment should be excused due to being unaware of the effects of the medication on his normal faculties. The defendant testified that he was not impaired but rather was sleep-deprived and sick, and he pulled over and fell asleep in his truck, which also served as his home. Additionally, he claimed he had trouble with some of the field sobriety exercises because of an old ankle injury. Evidence that he was impaired by whatever dosage of his medication which he had taken in 2016, and thus was aware that the medication could cause impairment, was not relevant to any material issue in the 2021 case.

The state asserts that the evidence was relevant to rebut the "heart" of the defense – that the defendant was not impaired by the medications because he was tolerant of the medication's effects. This argument lacks merit. "Rebuttal evidence explains or contradicts material evidence offered

7

by a defendant." *Britton v. State*, 414 So. 2d 638, 639 (Fla. 5th DCA 1982). Such evidence "is permitted to refute a defense theory or to impeach a defense witness." *Rimmer v. State*, 825 So. 2d 304, 321 (Fla. 2002). Here, the defendant testified on direct that he was not impaired. He testified on cross-examination that "now that I'm used to the medications," the medications did not make him tired. Whether he was impaired by the unknown dosage of the medications which he had taken in 2016 had no relevance to whether he was impaired by the unknown dosage of the medication which he took five years later. Further, the defendant's reaction to the medication in 2016 is not inconsistent with his testimony that he had developed a tolerance to the medication and that a lack of sleep and sudden sickness caused his behavior in 2021.

Taken to its logical extreme, the state's position would open the floodgates to propensity evidence anytime a defendant denied that alcohol or controlled substances found in his system caused behavior that is otherwise consistent with impairment by those substances, so long as there were some points of similarity between the prior and current episodes, which occur often are in DUI cases.

The state also contends that the defense theory "opened the door" to the evidence to "qualify, explain, or limit testimony or evidence previously admitted": "Here, [the defendant] opened the door to the subject matter of his medications and whether they made him sedated or sleepy, when he testified that they did not have that effect on him and his defense was built around the fact that he took his medications as lawfully prescribed and did not suffer impairment from them."

The "opening the door" theory of admitting otherwise inadmissible evidence was explained in *Bozeman v. State*, 698 So. 2d 629 (Fla. 4th DCA 1997):

> To open the door to evidence of prior bad acts, the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled. The "opening the door" concept is based on considerations of fairness and the truth-seeking function of a trial, where cross-examination reveals the whole story of a transaction only partly explained in direct examination.

*Id.* at 630-31 (citations omitted).

Thus, while a defendant may open the door to certain testimony by offering a trait of good character or by testifying inaccurately to a material fact, "[t]he State cannot ask a series of impermissible questions concerning prior acts of misconduct on cross-examination, and then claim that the defendant opened the door by answering the impermissible questions." *Robertson*, 829 So. 2d at 913.

Here, the defendant did not testify on direct that he had never been impaired by his medications while driving or that he was unaware the medications could cause impairment. Thus, he did not open the door.

To recap, evidence of unconnected crimes is inadmissible and is generally harmful because "[e]vidence that the defendant has committed a similar crime, or one equally heinous, will frequently prompt a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty." *Straight v. State*, 397 So. 2d 903, 909 (Fla. 1981) (quoting *Nickels v. State*, 106 So. 479, 488 (Fla. 1925)).

Having found error, we find it was not harmless, especially given the state's reliance on the evidence in its closing argument and the potential for its use to establish propensity.

Based on the foregoing, we reverse and remand for new trial. We find the remaining issue raised by the defendant to be without merit.

*Reversed and remanded for new trial.*

WARNER and FORST, JJ., concur.

*          *          *

***Not final until disposition of timely filed motion for rehearing.***

9