635 So.2d 4 (1993)
Jason Thomas DEATON, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
Jason Thomas DEATON, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
Nos. 73035, 77274.
Supreme Court of Florida.
October 7, 1993.
Rehearings Denied February 24 and May 2, 1994.
*5 Michael J. Minerva, Interim Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, and Billy H. Nolas and Julie D. Naylor, Sp. Appointed CCR, Ocala, for petitioner, appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., Diane Leeds and Joan Fowler, Asst. Attys. Gen., West Palm Beach, and Anita J. Gay, Asst. Atty. Gen., Miami, for respondent, appellee/cross-appellant.
PER CURIAM.
Jason Thomas Deaton appeals the denial of his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief as to his conviction for first-degree murder and petitions this Court for a writ of habeas corpus.[1] The State cross-appeals the trial court's grant of rule 3.850 relief as to Deaton's sentence of death and direction that a new penalty proceeding be conducted. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed, we deny the petition for writ of habeas corpus, affirm the denial of the rule 3.850 motion as to Deaton's conviction, affirm the granting of the rule 3.850 motion as to Deaton's sentence, and remand this cause for a new sentencing proceeding in accordance with the trial court's judgment.

The Facts
Deaton was convicted and sentenced to death for first-degree murder. Testimony at trial revealed that Deaton and Kerry Hall conspired to abduct and murder the victim in order to obtain the victim's car and money. After the two had abducted the victim, Deaton strangled the victim with an electrical cord and placed the body in the trunk of the victim's car. Deaton and Hall, along with three teenage girls, then drove the car to Tennessee, where Deaton and Hall dumped the body in a well. Police subsequently spotted the victim's car and arrested Deaton and Hall, after which, in separate trials, both were found guilty of murder and Deaton was sentenced to death.
In Deaton v. State, 480 So.2d 1279 (Fla. 1985), we affirmed Deaton's conviction and sentence. Deaton subsequently filed a rule 3.850 motion before the trial court and a petition for writ of habeas corpus with this Court. In the meantime, the governor signed a death warrant, which was stayed by the trial court pending an evidentiary hearing on the 3.850 motion. After the evidentiary hearing, the trial court denied relief as to Deaton's conviction, but granted relief as to Deaton's sentence.

Deaton's Claims
In seeking relief as to his conviction, Deaton alleges that: (1) the jury should have been given an instruction regarding jurisdiction as an element of the crime for which he was charged; (2) Deaton's counsel was ineffective because he failed to adequately investigate and prepare Deaton's defense and because he had a conflict of interest; (3) Deaton did not receive an adequate mental health examination; (4) Deaton was, in all likelihood, incompetent and should not have been allowed to stand trial; (5) the exclusion of taped statements made by codefendant Hall deprived Deaton of the right to present a self-defense defense; (6) Deaton's counsel was ineffective for failing to effectively litigate the suppression of statements made by Deaton; and (7) certain evidence that the State introduced was inadmissable and prejudicial. Deaton also raises a number of issues regarding the penalty phase proceeding in the event we find that the State's cross-appeal has merit.
In his first claim, Deaton contends that one of the factual issues at trial was whether the victim was killed in Florida or Tennessee and that the State had to prove beyond a reasonable doubt that the crime was committed within the jurisdiction of Florida. According to Deaton, the jury was incorrectly instructed that venue had to be proved to a reasonable certainty when the jury should have been instructed that jurisdiction had to be established beyond a reasonable doubt. He additionally asserts that this issue is not procedurally barred because jurisdiction cannot *6 be waived and that his counsel was ineffective in failing to request an instruction on jurisdiction.
The State, on the other hand, asserts that jurisdiction was not an element that needed to be proved in this case, that jurisdiction was not raised as a defense, that an instruction on jurisdiction was not requested, and that no such instruction was necessary. Moreover, the State contends that this issue is procedurally barred because it should have been raised on direct appeal. In any event, the State asserts that the failure to receive an instruction on jurisdiction was harmless because sufficient evidence exists within the record to show beyond a reasonable doubt that the killing was done or begun in Florida.
In Lane v. State, 388 So.2d 1022 (Fla. 1980), we discussed the principles of jurisdiction when a factual question exists as to whether or not a crime was committed in Florida. There we stated:
We agree with the Supreme Court of Vermont which stated in State v. Harrington, 128 Vt. 242, 250, 260 A.2d 692, 697 (1969): It is not essential to criminal responsibility that the accused do every act necessary to accomplish the crime within the jurisdiction where he is prosecuted... . Where the crime is composed of an interstate series of acts, it is jurisdictionally competent for a state to attach legal consequences to any overt act committed within its boundaries, even though the final impact and injury may occur elsewhere. [Citations omitted.]
This principle is more appropriate today than it ever was in view of the increased transient nature of our society. We recognize that this holding grants to the State of Florida broader jurisdiction than many of our other sister states, but we find it is allowed by the United States Constitution and has been directed by the legislature of this state. This broader jurisdiction nonetheless requires that the prosecution establish beyond a reasonable doubt that essential elements of the offense were committed within the jurisdiction of the State of Florida. In the instant case that would mean establishing either that the premeditation to murder the victim was formulated in the State of Florida or that the underlying felony, in this case the robbery, occurred in the State of Florida.
Under the instant circumstances, our holding that Florida has jurisdiction to try the appellant is supported by the decision of the Supreme Court of Indiana in Conrad v. Indiana, 262 Ind. 446, 317 N.E.2d 789 (1974). In Conrad the formulation in Indiana of the premeditated design to effect the death of a victim coupled with a continuous course of action commenced in Indiana to carry out that purpose was held sufficient to give Indiana jurisdiction even though the fatal blows and death of the victim occurred in the State of Ohio.
388 So.2d at 1028. Additionally, we noted that the issue of jurisdiction is a factual one to be determined by a jury upon appropriate instruction, and we adopted the majority view that territorial jurisdiction must be proved beyond a reasonable doubt rather than by a preponderance of the evidence.
Under the facts in Lane, the State conceded its inability to establish beyond a reasonable doubt that the fatal blow was struck in Florida, and the evidence indicated that the fatal blow or blows were probably struck in Alabama. However, the State argued that the evidence indicated that the crime was commenced in Florida. Although, as noted above, we did find that commencement in Florida was sufficient to support jurisdiction in Florida, under the facts in Lane, we found that the jury instructions given regarding jurisdiction were too general and that the jury must be given specific instructions regarding jurisdiction. Consequently, we remanded the case for a new trial.
In this case, a factual issue was presented as to whether the murder occurred in Tennessee or Florida. Deaton argued that the murder occurred in Tennessee as a result of self-defense. No instruction, however, was requested or given regarding jurisdiction. Instead, defense counsel requested and the jury received Florida Standard Jury Instruction (Crim.) 3.03 on venue:
Venue, it must be proved only to a reasonable certainty that the alleged crimes were committed in Broward County, Florida.
*7 The State is obligated to prove the court's jurisdiction over the defendant. Lane. Upon the request of the defendant, the court should instruct the jury on jurisdiction when the evidence is in conflict on the issue. However, because no such instruction was requested and there was substantial evidence that the criminal acts at issue except the actual disposal of the body were done or begun in Florida, no error occurred in this case. Even though counsel's failure to request an instruction on jurisdiction could be characterized as ineffective, the evidence was such that if an instruction had been given, there is not a reasonable probability that the result would have been different. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, we reject this claim.
In his second claim, Deaton argues that his trial counsel was ineffective because counsel failed to adequately investigate and prepare a proper defense and because counsel placed himself in a position of conflict. During Deaton's trial, his counsel was advised of two witnesses who were willing to testify that they had seen the victim alive in Tennessee after the date on which the victim was purportedly murdered. Additionally, codefendant Hall contacted Deaton's counsel and provided him with a taped statement in which Hall stated that Deaton had killed the victim in self-defense. Based on these facts, Deaton contends that his counsel was ineffective for failing to discover this information before trial and for failing to secure the admission of the tape at trial. Deaton also argues that, by taking the taped statement from Hall, counsel placed himself in the position of a witness, which created a conflict under the Florida Rules of Professional Responsibility. We disagree. As noted by the trial judge in denying relief as to this claim:
The Court has reviewed the original trial testimony, the Florida Supreme Court opinion in this case, and the evidence admitted at the evidentiary hearing, and finds that the defendant did not overcome the presumption that his counsel competently represented him at the guilt phase of the trial. Based on the facts known to his attorney at the time of trial, as well as the State's evidence presented at trial, his attorney presented the only possible defense available to him during trial. The Court finds no basis to "second guess" trial counsel's strategy during the guilt phase of the trial, and finds no credible evidence that the defendant was denied the effective assistance of counsel at this phase of the trial.
Moreover, as reflected by the record, counsel did interview the two Tennessee witnesses (codefendant Hall's mother and aunt) before trial and neither indicated anything about seeing the victim alive in Tennessee at that time. As to any purported conflict, because the tape was inadmissible hearsay, Deaton's counsel was never placed in the position of having to testify.
Likewise, we reject Deaton's fourth claim regarding his competency to stand trial. Deaton's own mental health expert found him to be competent at the time of trial and that expert reiterated that position at the evidentiary hearing. Further, the record supports such a finding.
The remainder of Deaton's claims as to his conviction are either procedurally barred or without merit. See Johnson v. State, 593 So.2d 206 (Fla.) (issues that could have been raised on direct appeal but were not, are noncognizable claims through collateral attack), cert. denied, ___ U.S. ___, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992); Smith v. State, 445 So.2d 323 (Fla. 1983) (same), cert. denied, 467 U.S. 1220, 104 S.Ct. 2671, 81 L.Ed.2d 375 (1984). See also Medina v. State, 573 So.2d 293 (Fla. 1990) (rule 3.850 proceedings are not to be used as a second appeal and it is inappropriate to use a different argument when seeking postconviction relief to relitigate issues previously disposed of).
Given our disposition of this case as to the State's cross-appeal as discussed below, we find that we need not reach the remaining issues raised by Deaton regarding alleged errors at his sentencing proceeding.

State's Cross-Appeal
The State argues that the trial judge erred in setting aside Deaton's sentence and in ordering a new sentencing proceeding. In *8 setting aside Deaton's sentence, the trial judge stated:
Based on the totality of the circumstances presented at the evidentiary hearing, this court is not convinced by a preponderance of the evidence that the defendant knowingly, freely, and voluntarily waived his right to testify or to call witnesses at the penalty phase. While the court does not find that the evidence presented by the defendant at the evidentiary hearing would necessarily have been beneficial to his cause at the sentencing phase, the court finds that the defendant was not given the opportunity to knowingly and intelligently make the decision as to whether or not to testify or to call these witnesses. For this reason, defendant's third issue, as it alleges the ineffective assistance of counsel during the sentencing phase of the trial, is granted, but is denied with respect to the allegations of the ineffective assistance of trial counsel during the guilt phase of the trial.
The State argues that the trial judge applied the wrong standard in finding that the evidence presented by Deaton would not "necessarily have been beneficial to his cause." According to the State, under Strickland, the trial judge should have considered whether there was a reasonable probability that, absent the errors, the balance of the aggravating and mitigating circumstances did not warrant death. The State argues that, had the trial judge used the appropriate standard, the aggravating circumstances would still warrant the death penalty under the evidence presented at the evidentiary hearing. The State also contends that it was Deaton and his family, rather than ineffective assistance of counsel, who prevented counsel from presenting mitigating evidence at trial.
In Strickland, the United States Supreme Court found that, to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that, because of that deficient performance, the defendant was prejudiced. Generally, prejudice is established by a finding that, but for the ineffective assistance of counsel, a reasonable probability exists that the outcome of the proceeding would have been different, or that, as a result of the ineffective assistance the proceeding was rendered fundamentally unfair.
In this case, the trial judge found that Deaton had waived the right to testify and the right to call witnesses to present evidence in mitigation, but concluded that, because his counsel failed to adequately investigate mitigation, Deaton's waiver of those rights was not knowing, voluntary, and intelligent. The rights to testify and to call witnesses are fundamental rights under our state and federal constitutions. Although we have held that a trial court need not necessarily conduct a Faretta[2] type inquiry in determining the validity of any waiver of those rights to present mitigating evidence,[3] clearly, the record must support a finding that such a waiver was knowingly, voluntarily, and intelligently made. See, e.g., Henry v. State, 613 So.2d 429 (Fla. 1992).
In this case, no evidence whatsoever was presented to the jury in mitigation and the trial judge found only one mitigating factor, even though evidence presented at the rule 3.850 evidentiary hearing established that a number of mitigating circumstances existed. Further, clear evidence was presented that defense counsel did not properly investigate and prepare for the penalty phase proceeding. At the evidentiary hearing, the following colloguy took place between Deaton's postconviction counsel ["Q"] and Deaton's trial counsel ["A"]:
Q. In terms of preparing for trial in advance of conviction, what did you do to prepare for the penalty phase?
A. Very little. I usually don't try to prepare the penalty phase in advance of the verdict, so for some reason I just don't like to get psyched up and get a defeated attitude. I usually don't prepare until I lose [the conviction phase], then I started scrambling for something to do about the penalty phase.

*9 ... .
Q. In terms of the penalty phase, did you explain to [Deaton] mitigating circumstances that you could pursue?
A. No, except he could testify as to his treatment and how he was emotionally abused as a child. Just very briefly, if he wanted to testify.
... .
Q. Now in terms of documentation, records such as the hospital reports or divorce records or any of those H.R.S. files, did you talk to Jason about finding those records in order to try to introduce them at the penalty phase?
A. No.
Q. Were you aware that documents such as that may be admissible even if it's hearsay at the penalty phase?
A. Yes.
Q. Was there any reason why you didn't try and locate any of those documents prior to trial?
A. No, no reason.
... .
Q. Now, do you recall how much time you had spent between the return of the guilty verdict and the start of the penalty phase?
A. Very little time.
Q. Was it like overnight?
A. I think overnight or the next day, couple of days. It was very little time.
Q. Do you recall what you tried to do in terms of developing the record or witnesses to testify?
A. Nothing at that point. There wasn't time to do it, except to wonder where his mother was. She indicated she would be back to ask Jason if he would like her to testify on his own behalf on the penalty phase.
In view of this testimony and other substantial evidence presented at the postconviction hearing, including the testimony of two mental health experts, we believe that counsel's shortcomings were sufficiently serious to have deprived Deaton of a reliable penalty phase proceeding. Consequently, under the circumstances of this case, we must find that Deaton's counsel was ineffective and that such ineffective assistance was prejudicial.
Accordingly, we deny the petition for writ of habeas corpus, we affirm the denial of the rule 3.850 motion as to Deaton's conviction, we affirm the granting of the rule 3.850 motion as to Deaton's sentence, and we remand this cause for a new sentencing proceeding.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Most of the issues raised in the habeas petition duplicate those in Deaton's 3.850 appeal, and we have consolidated the 3.850 appeal and the habeas petition for purposes of this appeal.
[2] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[3] See Anderson v. State, 574 So.2d 87 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 114, 116 L.Ed.2d 83 (1991).