DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RENE DE SANTUS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-2235

[October 15, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barbara Duffy, Judge; L.T. Case No. 04-009093CF10A.

Jason T. Forman of Law Offices of Jason T. Forman, Fort Lauderdale, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Richard Valuntas, Senior Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

Writing about the "undiscriminating use" of the federal postconviction writ of habeas corpus, Justice Robert Jackson observed that "[i]t must prejudice the occasional meritorious application to be buried in a flood of worthless ones. He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." *Brown v. Allen*, 344 U.S. 443, 532, 537 (1953) (Jackson, J., concurring).

Seventy-two years later, our experience with motions under Florida Rule of Criminal Procedure 3.850 is similar to that of Justice Jackson. But this case involves one of those needles.

Rene De Santus appeals the denial of his Rule 3.850 motion for postconviction relief after an evidentiary hearing. We reverse that order because two instances of ineffective assistance of counsel, taken together, rendered the trial fundamentally unfair.

A jury found De Santus guilty of a first-degree murder that occurred in the parking lot of an apartment complex. The victim purportedly stole De

Santus's vehicle and was later shot in the parking lot after a confrontation. No physical evidence tied De Santus to the crime. There was no video evidence of the shooting. The conviction rested exclusively on witness testimony.

At trial, the State's main witness was the only eyewitness to identify De Santus as the shooter. However, before trial, the main witness had given a statement to a defense investigator recanting her testimony implicating De Santus; she said she saw someone known as "Gangsta Baby" with the gun at the time of the shooting. The defense attorneys never confronted the main witness with her prior inconsistent statement, nor did they offer extrinsic evidence of that statement to the jury.

Before the grand jury, "Gangsta Baby" identified De Santus as the shooter, but later recanted his testimony. At trial, "Gangsta Baby" testified that De Santus was not the shooter. He explained that he initially blamed De Santus to protect himself, because he had also been present at the scene. The State introduced his prior grand jury testimony at trial. A witness at trial testified that she had seen "Gangsta Baby" with a firearm and that he had asked her for alcohol to clean his hands.

Another witness testified that the shooter wore a red jacket.[1] At the postconviction hearing, De Santus maintained that he wore a white basketball jersey with green trim at the time of the shooting.

At the postconviction hearing, one of the defense attorneys conceded that her mishandling of the main witness's prior statements resulted in the failure to present significant impeachment testimony at trial. After the main witness's testimony in the State's case, the defense team took no steps to secure her appearance for further cross-examination when the trial resumed after a two-week recess. In addition to bungling the prior inconsistent statements, the defense team also failed to offer evidence of the main witness's alleged attempt to extort money from De Santus's family in return for favorable testimony.

There was also significant evidence at the postconviction hearing that the defense team failed to take the time to properly advise De Santus about whether he should testify. Given that the State's case rested on eyewitness testimony alone, the decision of whether De Santus should take the stand was important to the defense case. At trial, the judge pressured the defense to decide whether to have De Santus testify. At the end of a trial

---

[1] As described below, a newly-discovered witness testified at the postconviction hearing that he saw a person with light skin and a red jacket leaving the scene.

day, the judge pressured De Santus to either testify or rest immediately. The lead defense counsel stated on the record that he had not yet spoken with De Santus about the choice to testify. Although the trial court ordered multiple recesses, the evidence at the postconviction hearing showed that the defense team did not spend adequate time with him to help him make an informed decision. Instead, the lead defense counsel was primarily focused on an attempt to recuse the trial judge, an unusual tactical choice, since a mid-trial recusal of a presiding judge is about as common as snow flurries in Miami.

In addition to the failings of the defense team, a newly-discovered eyewitness stepped forward and testified at the postconviction hearing that a light-skinned man wearing a red jacket held a gun and ran away from the parking lot after the shooting. He stated that De Santus was not the man with the gun.

Counsel's deficiencies identified above sufficiently demonstrate that De Santus was so prejudiced that his trial was fundamentally unfair, making postconviction relief the appropriate remedy. *See Deaton v. Dugger*, 635 So. 2d 4, 8 (Fla. 1993) (stating that "prejudice is established by a finding that . . . as a result of the ineffective assistance the proceeding was rendered fundamentally unfair"); *Washer v. State*, 284 So. 3d 1139, 1143 (Fla. 5th DCA 2019) (finding counsel ineffective because counsel's deficient conduct deprived appellant of a fundamentally fair trial); *Botto v. State*, 307 So. 3d 1006, 1010 (Fla. 5th DCA 2020) (granting a new trial and reversing denial of a Rule 3.850 motion after evidentiary hearing, finding counsel ineffective because "[i]n our opinion, the second trial did not provide a fundamentally fair and reliable proceeding").

The ineffective assistance surrounding De Santus's decision not to testify is crucial here. As the Second District has written:

> [A] defendant who elects not to testify at trial may still state a facially sufficient claim of ineffective assistance of counsel if the defendant can allege and prove "that trial counsel's preparation for his testimony was deficient such that it deprived [the defendant] of the ability to choose whether to testify on his own behalf and that this deficiency prejudiced [the defendant.]"

*Riggins v. State*, 168 So. 3d 322, 324 (Fla. 2d DCA 2015) (quoting *Beasley v. State*, 18 So. 3d 473, 496 (Fla. 2009)); *see also Morris v. State*, 931 So. 2d 821, 833 (Fla. 2006) ("Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the

strategic implications of each choice, and that it is ultimately for the defendant himself to decide. . . . Moreover, if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify.") (quoting *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992)).

We reject the State's argument that because De Santus's testimony would have been cumulative to Gangsta Baby's trial testimony, no prejudice arose from the failure to adequately counsel De Santus on his right to testify. A defendant's trial testimony "cannot be 'cumulative' because the impact of a defendant's own testimony is qualitatively different from the testimony of any other witness[.]" *Riggins*, 168 So. 3d at 325.

For these reasons, we reverse the order denying postconviction relief and remand to the circuit court for further proceedings.

*Reversed and remanded.*

KUNTZ, C.J., and MAY, J., concur.

*    *    *

***Not final until disposition of timely-filed motion for rehearing.***