# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 5D2024-0003
LT Case No. 2017-CF-2152

_____

ROBERT K. BAVLE,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Marion County.
Robert W. Hodges, Judge.

W. Charles Fletcher, of Law Office of W. Charles Fletcher,
Jacksonville, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Kristen
Davenport, Assistant Attorney General, Daytona Beach, for
Appellee.

September 5, 2025

PRATT, J.

    Robert Bavle ("Appellant") appeals the trial court's denial of
his post-conviction motion that alleged ineffective assistance of his
trial counsel. At his second-degree murder trial in 2017, the jury
rejected Appellant's self-defense claim and convicted him of
manslaughter. In his post-conviction motion, Appellant raised a

variety of grounds for ineffective assistance of counsel, several of which he now appeals. Each claim on appeal involves an assertion that trial counsel missed opportunities to present evidence or testimony corroborating Appellant's claim that the victim had threatened him in the hours, days, and weeks before Appellant shot him. Because Appellant cannot demonstrate that any alleged deficient performance prejudiced his defense, we affirm.

## I.

On June 18, 2017, Appellant shot and killed the victim outside a restaurant in Ocala. The State charged Appellant with second-degree murder with a firearm. The case proceeded to a three-day trial in April 2019.

The trial testimony established that, on the night of the shooting, the victim initiated a physical altercation with Appellant by hitting him in the back of the head. In response, Appellant repeatedly shot the victim, firing thirteen rounds in total. State witnesses agreed that Appellant fired two initial shots but continued firing and followed the victim through the parking lot as the victim retreated. The victim's retreat ended when he succumbed to his injuries and fell. Appellant then stood over the victim, who was lying on the ground, and fired six or seven more rounds at him. A witness just feet away from where the victim fell testified that he clearly saw the victim had nothing in his hands. The victim was not carrying a firearm, although one was later found in his vehicle.

Appellant did not dispute that he shot and killed the victim; instead, he asserted self-defense and testified on his own behalf. Appellant initially met the victim several years before the shooting. About two months before the shooting, the victim showed several of his firearms to Appellant. Afterward, the victim accused Appellant of stealing one of the firearms. Appellant testified that in the time between that accusation and the shooting, the victim repeatedly contacted him with increasing aggressiveness about the purported theft.

On the day of the shooting, Appellant reached out to the victim to de-escalate the situation. Appellant testified that the victim told

2

him that he was looking for him, suggested he knew where Appellant's mother lived, and asked that Appellant share his location. Appellant testified that, early on, he had thought the accusations and threats were a joke, but as they continued and increased in severity, he believed that his life was in danger. For the most part, trial counsel did not introduce evidence, either documentary or testimonial, to corroborate Appellant's claims that he had been threatened prior to the night of the shooting. However, there was at least one significant piece of corroborating testimony: a defense witness confirmed that the victim had offered $1,000 for Appellant's location.

The jury found Appellant guilty of the lesser-included offense of manslaughter with the additional finding that Appellant had used a firearm in the commission of the offense. The trial court sentenced Appellant to twenty-eight years. Appellant filed a direct appeal, and this Court affirmed. *Bavle v. State*, 300 So. 3d 380, 380 (Fla. 5th DCA 2020) (Mem.). Appellant timely filed a post-conviction motion in which he alleged that his trial counsel provided ineffective assistance by failing to file a motion to dismiss under the Stand Your Ground law and by failing to introduce at trial various evidence and testimony that would have corroborated Appellant's testimony about the victim's threats.

The post-conviction court held an evidentiary hearing on the motion. At the hearing, the primary focus of Appellant's post-conviction counsel was establishing the availability of evidence and testimony corroborating Appellant's position that the victim's threats placed Appellant in reasonable fear for his life at the time of the shooting. Such evidence included the victim's messages to Appellant, the victim's conversations with third parties about Appellant, the victim's social media posts referencing Appellant, and the victim's social media posts indicating he possessed firearms and might be involved with a gang.

Appellant's mother explained that trial counsel decided not to file a motion to dismiss under the Stand Your Ground law at least in part because of the political climate surrounding local shootings and the Black Lives Matter movement. Appellant's trial counsel noted that he did not file a Stand Your Ground motion to dismiss because he did not believe it would have been successful, and it

3

would have given the State the advantage of previewing the defense's case before trial.

The lower court denied Appellant's post-conviction motion in a written order. This appeal followed.

## II.

Appellant argues that his trial counsel was ineffective for failing to: (1) file a motion to dismiss based on the Stand Your Ground law; (2) introduce at trial the threatening messages he received from the victim; (3) explain why the courtroom should be cleared so a defense witness could testify about the victim without fear of reprisal; (4) refresh a defense witness' recollection after the witness could not recall portions of his deposition testimony, including threats made by the victim; (5) respond to the State's hearsay objections in a way that secured the admission of threats that were admissible state-of-mind evidence; and (6) call Appellant's mother at trial to provide evidence of, and further context for, Appellant's fear before the shooting.

"When considering a trial court's ruling on a rule 3.850 motion after an evidentiary hearing, we defer to the trial court's factual findings—provided that they are supported by competent, substantial evidence—but we review de novo the trial court's 'application of the law to those facts.'" *Parenti v. State*, 225 So. 3d 949, 951 (Fla. 5th DCA 2017) (quoting *Jennings v. State*, 123 So. 3d 1101, 1113 (Fla. 2013)).

To succeed on an ineffective-assistance claim, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When a defendant fails to establish one *Strickland* prong, we need not determine whether he fulfills the other. *See Hurst v. State*, 18 So. 3d 975, 996 (Fla. 2009). To establish prejudice, the defendant must show that but for counsel's deficient performance, "a reasonable probability exists that the outcome of the proceeding would have been different." *Deaton v. Dugger*, 635 So. 2d 4, 8 (Fla. 1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In applying *Strickland*,

4

we are mindful that it "speaks only to the small class of cases in which counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment at all," and it "does not operate as a catch-all mechanism for 'fixing' trials we might have conducted differently." *Bates v. Sec'y, Fla. Dep't of Corrs.*, 768 F.3d 1278, 1299–1300 (11th Cir. 2014) (internal quotation marks omitted).

We need not determine—and, therefore, do not decide—whether Appellant's trial counsel performed deficiently.[*] That's because none of the alleged missteps that Appellant assigns to his trial counsel prejudiced his defense. Even if the entire body of corroborating evidence and testimony had been admitted—whether at an immunity hearing, at trial, or both—there is no reasonable probability of a different result.

Section 776.012(2), Florida Statutes (2017), marks the boundaries of justified use of deadly force in self-defense:

---

[*] We do not decide whether counsel performed deficiently by failing to file a Stand Your Ground motion to dismiss. However, we reject any argument that political pressure provides a legitimate basis for failing to file such a motion. In line with some of the testimony presented at the evidentiary hearing, the briefs suggested that trial counsel decided not to file the motion based at least in part on a belief that doing so would be fruitless amidst political pressure stemming from recent shootings and Black Lives Matter protests. (Appellant's brief states that the victim in this case was black while Appellant is white). We firmly reject any suggestion that it is a legitimate defense strategy to fail to act on a defendant's behalf based on counsel's prognostication that political pressure will sway the court from its duty to neutrally apply the law without racial bias. *Cf. Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (noting "a presumption of honesty and integrity in those serving as adjudicators"). In the rare instance that counsel has a legitimate basis to question the court's impartiality—and the parties point to nothing in the record to suggest that was the case here—abandoning a defense that counsel thinks the law and the facts support is not the solution.

A person is justified in using . . . deadly force if he . . . reasonably believes that using . . . such force is necessary to prevent imminent death or great bodily harm to himself . . . or to prevent the imminent commission of a forcible felony. A person who uses . . . deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his . . . ground if the person using . . . the deadly force is not engaged in a criminal activity and is in a place where he . . . has a right to be.

*Id.* Section 776.032, Florida Statutes (2017), part of Florida's Stand Your Ground law, provides immunity from prosecution for those who use justifiable force in self-defense. "An objective standard is applied to determine whether the immunity provided by [the Stand Your Ground law] attaches." *Mobley v. State*, 132 So. 3d 1160, 1164 (Fla. 3d DCA 2014). "That standard requires the court to determine whether, based on circumstances as they appeared to the defendant when he or she acted, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant." *Id.* at 1164–65.

Appellant calls our attention to *Bouie v. State*, 292 So. 3d 471 (Fla. 2d DCA 2020), where the Second District Court of Appeal grappled with the extent of Stand Your Ground immunity and justified use of lethal force. In that case, following a car chase between the defendant, his brother, and the victim, the victim and the defendant exited their vehicles. *Id.* at 475–76. The victim, with whom the defendant and his brother had a "history of animosity" and "prior violent confrontations," held a can of pepper-spray or mace. *Id.* at 476, 481. According to defense witnesses, the victim "was banging on [the defendant's brother's] window with a black object that looked like a gun and shouting threats at him." *Id.* at 482. The defendant fired twelve rounds at the victim. *Id.* at 475–76. During the shooting, the victim began to retreat. *Id.* The defendant claimed immunity for his use of lethal force because he was defending his brother from a risk of imminent death or great bodily harm. *Id.* at 473. The trial court found that the State failed to prove the defendant's initial use of deadly force was unreasonable. *Id.* at 481. However, the trial court denied the

6

defendant's motion to dismiss based on its conclusion that the shooting became unreasonable when the victim retreated. *Id.*

The Second District disagreed with the trial court's determination that the victim's retreat ended the defendant's justification for use of lethal force. *Id.* at 483. It reasoned that the victim could "continue to pose a threat of death or imminent bodily harm even when he is seeking cover." *Id.* at 482. Although the court in *Bouie* noted that it did "not mean to say that a defendant's reasonable belief that deadly force was necessary can never become unreasonable as the situation changes," it held that the State failed to prove by clear and convincing evidence that the defendant's use of deadly force became unjustified during the exchange. *Id.* at 482–83.

We agree with the Second District that an armed aggressor's retreat, by itself, does not necessarily end the imminent lethal threat he poses. *See id.* at 482 ("An armed man can continue to pose a threat of death or imminent bodily harm even when he is seeking cover behind or inside a car."). Even a mortally wounded assailant can continue to pose a lethal threat. However, on these particular facts, we find *Bouie* inapplicable. Unlike in *Bouie*, Appellant never saw the victim holding anything he thought was a weapon, and he pursued the victim across a parking lot and then stood directly over the victim—who was lying on the ground and had nothing in his hands—while firing six or seven more rounds at him. On these facts, the jury concluded that Appellant's actions exceeded the scope of necessary self-defense, and it convicted him of manslaughter. Moreover, it rendered its verdict after hearing Appellant testify, in his own words, about the threats the victim had directed toward him, his fear of the victim, and his belief the victim was armed. The testimony and evidence that Appellant faults his counsel for failing to introduce may have bolstered Appellant's explanation for why he fired the initial shots, but it would not have offered a justification for the final ones. Stated differently, it is not reasonably probable that introducing the additional testimony and evidence would have led to a different outcome (whether at trial or on a Stand Your Ground motion to dismiss). Thus, any alleged deficiencies in counsel's performance did not prejudice the defense.

7

## III.

For the foregoing reasons, we affirm the trial court's denial of Appellant's post-conviction motion.

AFFIRMED.

BOATWRIGHT, J., concurs.
SOUD, J., concurs in result only, without opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————